UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM DAVID BUSH,<br><br>    Plaintiff,<br><br>    v.<br><br>PAUL THOMAS CROFT, et al.,<br><br>    Defendants. | Case No. 20-cv-04059-SK<br><br>**ORDER DISCHARING ORDER TO SHOW CAUSE AND GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Regarding Docket Nos. 35, 36 |

This matter comes before the Court upon consideration of the motion to dismiss filed by Croft Enterprises LLC, Jonathan Frost, and Paul Thomas Croft (collectively, "Defendants"). Having carefully considered the parties' papers, relevant legal authority, and the record in the case, the Court hereby GRANTS Defendants' motion for the reasons set forth below.

The Court FURTHER ORDERS that the Order to Show Cause ("OSC") is DISCHARGED. The Court issued the OSC to Plaintiff William David Bush to show cause why the Court should not dismiss his claims for lack of prosecution or grant Defendants' motion as unopposed based on Plaintiff's failure to timely oppose the motion to dismiss. (Dkt. No. 36.) While Plaintiff's response to the OSC is difficult to understand, it appears as though perhaps Plaintiff did not receive proper notification of the motion to dismiss.

**BACKGROUND**

**A.   Plaintiff's Previous Complaints.**

On July 17, 2020, the Court dismissed Plaintiff's complaint with leave to amend. The Court explained:

> It is not clear from the Complaint what claim or claims Plaintiff seeks to assert. Plaintiff seems to allege that Defendants (grouping all of the defendants together) provided incorrect or fraudulent tax advice to Plaintiff and his brother. (Dkt. No. 1.) It is not clear whether Plaintiff paid Defendants any money, whether Plaintiff followed

> Defendants' advice, and/or whether Plaintiff suffered any harm as a consequence. Plaintiff discusses the preparation of his brother's tax returns, but is not clear whether Plaintiff hired Defendants and/or filed any inaccurate tax returns.
>
> . . .
>
> Plaintiff contends that the Court has diversity jurisdiction over his claims. For diversity jurisdiction, the parties must be citizens of different states and the amount in controversy must exceed $75, 000. Plaintiff alleges that he seeks $77,700 in compensatory damages, but, as discussed above, it is not clear how he was injured or what damages he incurred.

(Dkt. No. 4.)

On August 3, 2020, Plaintiff filed an amended complaint. (Dkt. No. 6.) Without providing specifics, Plaintiff alleged that he entered into a verbal agreement with Defendants and that Defendants breached it. (*Id.*) Plaintiff alleged that "Defendant(s) proposed a 25% commissions split for new clients that the Plaintiff would solicit and bring in as a sales agent of their enterprise." (*Id.*) This alleged fact raises more questions than it answers. For example, it is not clear if Plaintiff alleges that he and Defendants created a business together and if so, what the business was. It is also unclear if Plaintiff alleges that he was soliciting clients for Defendants or if Plaintiff actually did solicit any new clients for Defendants.

Plaintiff also alleged that Defendants committed fraud but did not allege what Defendants did or said that was fraudulent. Additionally, Plaintiff failed to differentiate between the Defendants. (*Id.*)

The Court granted Defendants' motion to dismiss Plaintiff's amended complaint and again provided leave to amend. The Court explained to Plaintiff from the bench that he was required to describe the facts which support his claim. In other words, he was required to provide facts explaining "who, what, when and how" to support his claim.

On February 4, 2021, Plaintiff filed another amended complaint. (Dkt. No. 25.) Again, Plaintiff failed to explain the basic facts supporting his claims. Therefore, the Court granted Defendants' motion to dismiss but provided Plaintiff with a final opportunity to amend his complaint to allege viable claims. The Court explained that Plaintiff should do his best to describe the facts supporting his claims and personal jurisdiction over each Defendant. The Court further

explained that to the extent Plaintiff alleges that one, two, or all three Defendants breached a contract, Plaintiff was require to explain: (1) the terms of this contract; (2) how the Defendant or Defendants breached the contract; (3) the provision of the contract the Defendant or Defendants breached; (4) how Plaintiff performed or was excused from performing all of his obligations under the contract; (5) how Plaintiff was damaged; and (6) whether the contract was written or oral. Plaintiff shall explain what *each* Defendant did or said.

Additionally, to the extent Plaintiff alleges that one, two, or all of the Defendants committed fraud, Plaintiff was required to explain: (1) the misrepresentation; (2) who made the misrepresentation; (3) when the misrepresentation was made; and (4) where was the misrepresentation made (orally or in writing, and if in writing, what type of writing). Moreover, Plaintiff was required to explain whether the Defendant or Defendants knew the misrepresentation was false and was intended to induce his reliance on that misrepresentation. Finally, Plaintiff was required to explain whether he relied on the misrepresentation, his reliance was reasonable, and how he was damaged by the misrepresentation. Again, the Court reminded Plaintiff that he was required to allege what *each* Defendant did or said.

Alternatively, to the extent Plaintiff contends that the Defendant's or Defendants' fraud was based on a failure to disclose information as opposed to making an affirmative misrepresentation, Plaintiff was required to allege:

> (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact.

*Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 162 (2015).

**B.      Plaintiff's Second Amended Complaint.**

On April 8, 2021, Plaintiff filed a Second Amended Complaint ("SAC"). (Dkt. No. 34.) In this SAC, Plaintiff alleges that he spoke with an unnamed Croft Enterprises associate about obtaining a loan for Plaintiff's brother. (*Id*. at p. 3.) The Croft Enterprises associate also explained that Croft Enterprises was very good at obtaining large tax returns. (*Id*. at p. 4.)

3

Plaintiff then had a call with Paul Croft to discuss the tax strategy his company used. (*Id*.) Paul stated that Croft Enterprise was interested in bringing on new marketing partners in California and discussed providing Plaintiff twenty-five percent for any new customers Plaintiff brought to Croft Enterprises. (*Id*.) Croft estimated Plaintiff's brother would receive approximately $25,000 from his tax returns. (*Id*. at p. 5.) Plaintiff was interested, and he and Croft agreed to send over more documents and then "follow up in a couple weeks to confirm." (*Id*.) During this time, Plaintiff "started identifying potential candidates, and making initial phone calls planting seeds about the new wiz tax strategy that this high powered accounting group could achieve without any upfront cost with a back end split[.]" (*Id*.) Plaintiff also conducted due diligence for himself and assisted his brother in collecting his information from the previous three years. (*Id*.)

On another call with Croft, Plaintiff and Croft agreed to a "25% spit [*sic*] of commissions for clients that [Plaintiff] brought into the business fold for Croft, and the concept of [Plaintiff] fronting the initial deposits, to then gain a larger back end percentage split with [Plaintiff's] clients." (*Id*.) Plaintiff and Croft "agreed on those terms, and proceeded to discuss further details. [Plaintiff's] focus was on mitigating risk for [himself] and [his] clients." (*Id*.) Plaintiff requested that they develop an insurance bond to protect his clients from any financial loss stemming from any potential accounting mistakes. (*Id*. at p. 6.) Croft sent him a contract entitled "Audit Insurance," which was actually an indemnification agreement, limiting damages to Croft Enterprises to the amount paid by the client. This was when Plaintiff began to realize the business enterprise might be a scam and Plaintiff asked more questions about Croft Enterprises' methods. (*Id*.)

Plaintiff also consulted with a tax attorney, a former FBI agent, and a former IRS agent, who confirmed that the actions of Croft and Jonathan Frost were illegitimate. (*Id*. at p. 7.) Plaintiff spoke with Croft to explain that he had discovered what Croft had proposed was not legal. (*Id*.) Croft responded by telling Plaintiff to stop communicating with him or his team. Croft stopped responding to Plaintiff's emails and blocked him from Linked-in. (*Id*.)

Plaintiff had already gathered confidential and sensitive paperwork from clients for the purpose of doing business with Croft Enterprises. Plaintiff's "other clients [he] had spoken with

were less upset, but [he] could tell they were also disappointed, and their confidence in [his] business prowess had been injured." (*Id.*)

Plaintiff alleges breach of an oral contract; the contract was that Plaintiff would solicit clients for Croft Enterprises and would receive twenty-five percent of the commissions charged in exchange. (*Id.* at 8.) Plaintiff contends that Defendants breached the contract because the business was actually a fraudulent tax scam. (*Id.*) Plaintiff alleges that he performed by securing documentation from clients and "bringing Clients to the table." (*Id.*) Plaintiff was injured by his loss of time and in his reputation. (*Id.*)

Plaintiff also brings a claim for fraud, alleging that Croft and his employees represented that Plaintiff and Plaintiff's clients would be able to amend the three last years of tax returns using a S-corporation and reclassifying personal or other non-deductible expenses as business expenses. (*Id.* at pp. 8-9.) Plaintiff alleges that these were lies and that Defendants "attempted to trick [Plaintiff] into swindling [his] network of clientele and family into their ill-gotten tax scam." (*Id.* at p. 9.)

## ANALYSIS

### A.   Applicable Legal Standard on Motion to Dismiss.

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. On a motion to dismiss under Rule 12(b)(6), the Court construes the allegations in the complaint in the light most favorable to the non-moving party and takes as true all material allegations in the complaint. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Rather, a plaintiff must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . When a complaint pleads facts that

5

1 are merely consistent with a defendant's liability, it stops short of the line between possibility and
2 plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting
3 *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). If the allegations are insufficient to
4 state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g.*
5 *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Lieche, Inc. v. N.*
6 *Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

7 As a general rule, "a district court may not consider material beyond the pleadings in ruling
8 on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on*
9 *other grounds, Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted).
10 However, documents subject to judicial notice, such as matters of public record, may be
11 considered on a motion to dismiss. *See Harris v. Cnty of Orange*, 682 F.3d 1126, 1132 (9th Cir.
12 2011). In doing so, the Court does not convert a motion to dismiss to one for summary judgment.
13 *See Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other*
14 *grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). "The court need
15 not . . . accept as true allegations that contradict matters properly subject to judicial notice . . . ."
16 *Sprewell v. Golden State Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001).

17 **C.    Defendants' Motion to Dismiss.**
18 **1.    Claim for Breach of Contract.**

19 To state a claim for breach of contract, Plaintiff must allege "the existence of the contract,
20 performance by the plaintiff or excuse for nonperformance, breach by the defendant and
21 damages." *First Commercial Mortgage Co. v. Reece*, 89 Cal. App.4th 731, 745 (2001). Here,
22 although Plaintiff believes that a contract was formed, he alleges that the parties were negotiating
23 a contract when Plaintiff discovered that it was not legitimate. According to Plaintiff, he
24 discovered that Croft's proposed tax plan was a scam before the contract was confirmed. Thus, no
25 contract was formed. Even if a contract had been formed, Plaintiff fails to allege facts to show
26 performance. While Plaintiff began collecting information from his contacts, his contacts never
27 became clients of Croft Enterprises, and Croft Enterprises never performed any tax services for
28 Plaintiff's contacts. Finally, Plaintiff fails to allege facts to show that Defendants breached any

6

1  contract. Accordingly, the Court GRANTS Defendants' motion to dismiss as to Plaintiff's breach
2  of contract claim.

3          2. **Claim for Intentional Misrepresentation**.

4          To state a claim for intentional misrepresentation, Plaintiff must allege: "a
5  misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance
6  on the misrepresentation, (4) actual and justifiable reliance, and (5) resulting damage." *Daniels v.*
7  *Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1166 (2016). Plaintiff appears to allege
8  that Croft's statement regarding the tax strategy or tax services were false, but Plaintiff does not
9  allege that he actually relied on any such misstatements. Again, Plaintiff alleges that he
10 discovered the proposed tax strategy or services were not legitimate before Plaintiff actually
11 provided any new clients to Croft Enterprises. Thus, Plaintiff fails to allege facts to support a
12 claim for intentional misrepresentation.
13         Plaintiff also fails to allege facts to support a claim for fraud based on concealment. To
14 state a claim based on Defendants' failure to disclose information, Plaintiff must allege:

> (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact.

19 *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 162 (2015). This claim
20 fails for the same reason – Plaintiff discovered the alleged fraud or omission *before* Plaintiff
21 provided any new clients to Croft Enterprises. Therefore, Plaintiff did not rely on any omissions
22 to his detriment. Accordingly, the Court GRANTS Defendants' motion to dismiss.
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss and DISMISSES Plaintiff's claims WITH PREJUDICE, because further amendment would be futile.

**IT IS SO ORDERED**.

Dated: May 18, 2021

_____
SALLIE KIM
United States Magistrate Judge